UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| YOANDRI MIGUEL IGLESIAS,<br><br>Petitioner,<br><br>v.<br><br>BRIAN ENGLISH,<br><br>Respondent. | CAUSE NO. 3:26cv534 DRL-SJF |

OPINION AND ORDER

Immigration detainee Yoandri Miguel Iglesias filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Miguel Iglesias filed a reply to the respondent's status report, which the court will construe as a reply to the petition. The petition is ready to be decided.

Mr. Miguel Iglesias is a Cuban citizen who entered the United States in December 2019 without admission or inspection [16-1]. He was apprehended by a Border Patrol Agent on December 12, 2019, near Nogales, Arizona, and was transported to the Nogales Border Patrol Station for further processing. He was placed in expedited removal proceedings as a noncitizen not in possession of a valid entry document, *see* 8 U.S.C. § 1182(a)(7)(A)(I)(i), and referred for criminal prosecution. On December 13, 2019, he pleaded guilty to illegal entry under 8 U.S.C. § 1325(a)(1) and was sentenced to time served. *See United States v. Miguel-Iglesias*, No. 4:19po39032 (D. Ariz. decided Dec. 13, 2019). Mr. Miguel-Iglesias asserted a fear

of removal to Cuba and, after an interview with an asylum officer, was placed in regular removal proceedings. He was released from custody on a $10,000 bond.

Mr. Miguel Iglesias was convicted in state court of assault causing bodily injury to a family member on February 28, 2023. The next year, on December 5, 2024, Mr. Miguel Iglesias was ordered removed to Cuba and his applications for relief were denied by an immigration judge. There is no indication he was detained following the entry of the removal order.

On February 18, 2026, Mr. Miguel Iglesias was encountered by ICE at the Onondaga County probation office and was taken into custody for removal. On March 16, 2026, Mr. Miguel Iglesias was given notice that ICE intended to remove him to Mexico, and he refused to sign the portion of the notice confirming his receipt. On March 26, 2026, he was served a Notice of Failure to Comply based on a refusal to complete and sign the travel document application form, informing him that if he does not make good faith efforts to obtain the necessary documents for his removal, his detention could be continued until he demonstrated he was making reasonable efforts to comply with the order of removal. He refused to sign to confirm receipt of the notice. On May 12, 2026, ICE again served him with a notice of removal to Mexico, but Mr. Miguel Iglesias again refused to sign it.

This habeas petition was filed in April 2026, arguing that Mr. Miguel Iglesias' continued detention was unlawful because his removal to Cuba was not reasonably foreseeable. He asked that he be given a custody review or a bond hearing.

In answering the petition, the Warden (through his federal counsel) provided a declaration from a deportation officer detailing the steps that had been taken to effectuate

Mr. Miguel Iglesias' removal [16-2]. The deportation officer attested that on February 27, 2026, ICE Enforcement and Removal Operations (ERO) submitted a request to Cuba to accept Mr. Miguel Iglesias, which was denied on June 26, 2026. The officer says ICE ERO intends to remove Mr. Miguel Iglesias to a third country, but he refused to complete and sign a travel document application form. In reply, Mr. Miguel Iglesias reiterates that his removal is not reasonably foreseeable because Cuba will not issue a travel document.

The Warden first argues that the court lacks subject matter jurisdiction over Mr. Miguel Iglesias' habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Miguel Iglesias ended in early 2025. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period"

or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] The Warden relies on Section 1231(a)(6) as the basis for Mr. Miguel Iglesias' current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. Indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute removal. *Id.* at 700-01. Even after, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations— are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

It appears Mr. Miguel Iglesias' time in detention has not reached six months. But it is unnecessary to spend time counting his months in detention because, even under the standard announced in *Zadvydas*, Mr. Miguel Iglesias has not shown he is entitled to release. An immigration detainee's refusal to cooperate with removal efforts precludes him from obtaining a favorable ruling on a claim under *Zadvydas*. The first federal appellate case to have addressed this issue appears to be *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003). There, the immigration detainee refused to complete an application for travel documents to Poland, and Poland expressly required the information on the application to determine whether it would issue him travel documents. *Id.* at 1059. The immigration detainee further frustrated removal efforts by providing the government with conflicting information about his identity and family. *Id.* The Ninth Circuit reasoned that "the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock" and held that "an alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the [government's] efforts to remove him." *Id.* at 1060-61.

Though neither the Supreme Court nor the Seventh Circuit appear to have addressed this precise issue in the immigration context, this seems a rather sensible rule—after all, one cannot typically create or self-inflict an alleged constitutional or other harm all one's own and then maintain standing to complain about it. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021) (injury must be fairly traceable to defendant for standing to exist). Several federal courts that have addressed this concern in immigration cases have unanimously agreed with the Ninth

Circuit. *See, e.g., Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019); *Hook v. Lynch*, 639 F. Appx. 229 (5th Cir. 2016); *Kovalev v. Ashcroft*, 71 F. Appx. 919, 924 (3d Cir. 2003); *Souleymane v. Olsen*, 2026 WL 785596, 4 (S.D. Ind. Mar. 20, 2026). This rule is also consistent with 28 U.S.C. § 1231(a)(1)(C), which extends the removal period if an individual refuses to cooperate with removal efforts, and 8 C.F.R. § 241.5(a)(2), which requires such cooperation as a mandatory condition of supervised release.

Mr. Miguel Iglesias does not contest that he is not cooperating with removal efforts. He focuses on the government's inability to remove him to Cuba, but the government may remove him to any willing country where he will not face torture or persecution. *See* 8 U.S.C. §§ 1231(b)(2)(E), (b)(3). Mr. Miguel Iglesias' uncontested, unexplained refusal to cooperate with removal efforts to Mexico prevents the court from finding that his removal is not reasonably foreseeable.

For these reasons, the court DENIES the petition for writ of habeas corpus (ECF 8) and ORDERS the clerk to enter judgment and close this case.

SO ORDERED.

August 21, 2026

*s/ Damon R. Leichty*
Judge, United States District Court